# FIRST AMENDMENT TO EXCLUSIVE DISTRIBUTOR AGREEMENT

This First Amendment to EXCLUSIVE DISTRIBUTION AGREEMENT ("Amendment") is made and entered into this 2 day of ~~December, 2009~~ Feb 2010, by and between **Affliction Holdings, LLC**, a California limited liability company ("Affliction"), and **Multiprint Tex Manufacturing Ltd.** (the "Distributor").

## RECITALS

A.  Affliction and Distributor are parties to that certain Exclusive Distribution Agreement dated May 14, 2009 (the "Original Agreement");

B.  Affliction and Distributor desire to amend the Original Agreement as set forth below.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereby amend the Original Agreement as follows:

1.  **Amendment.** This Amendment is intended to modify specific provisions of the Original Agreement as set forth below in Section 1 of this Amendment. All other provisions of the Original Agreement shall remain in full force and effect. To the extent any inconsistency between this Amendment and the Original Agreement arises, the terms of this Amendment shall control.

    (a)  Paragraph 4 of the RECITALS referencing the Ring is stricken in its entirety.

    (b)  Section 1.3 of the Original Agreement is amended to read:

    "<u>Affliction</u>" shall mean Affliction unless otherwise noted.

    (c)  Section 2.1 of the Original Agreement is amended to read:

    "(and otherwise subject to Article 12.7 with regard to the Throwdown Trademark and The Throwdown License and the other provisions contained herein)".

    (d)  Section 2.2 of the Original Agreement is stricken in its entirety.

    (e)  Section 3.1(c) of the Original Agreement is amended by replacing Archaic and Ring on line 6 with Throwdown .

    (f)  Section 3.7 of the Original Agreement is stricken in its entirety.

(g) Section 3.8 of the Original Agreement is amended to read:

"3.8 Buckle Exclusion Notwithstanding anything else to the contrary contained herein, Distributor acknowledges that The Buckle, Inc. ("Buckle"), or its parent, subsidiary or affiliate, shall have the right to purchase Products from Affliction under the Archaic Trademark (only) and to sell such Products in its retail stores in the event it opens such stores in the Territory."

Remaining language of Section 3.8 is stricken.

(h) Section 9(c) of the Original Agreement is amended to read:

"(c) is the owner of all right, title and interest in and to the Trademarks (other than Throwdown) in the Territory with respect to goods in International Class 25 and the Trademarks Affliction and Sinful are registered for such goods."

(i) Section 9 of the Original Agreement is amended by striking the last sentence which reads "To the extent applicable, Ring makes the foregoing warranties with regard to Ring branded product which is the subject of this Agreement".

(j) Section 12.3 of the Original Agreement is amended to read:

"Consistent with the provisions of Article 24 and the other provisions of this Agreement, Distributor acknowledges (a) Affliction owns the Marks as previously described herein and all goodwill associated with or symbolized by said Marks, whether or not said Marks are registered in the Territory. Distributor has no ownership right in or to any of the Marks, and (c) Distributor shall acquire no ownership interest in or to any of the Marks by virtue of this Agreement. Distributor shall do nothing inconsistent with Affliction's ownership (or the Throwdown license) with regard to the Marks and related goodwill either during or after the Term and agrees that all use of the Marks by Distributor shall inure to the benefit of Affliction. Nothing in this Agreement shall be deemed to constitute or result in an assignment of any of the Marks to Distributor or the creation of any equitable or other interests therein. Distributor shall not use any of the Marks in any manner as a part of its business, corporate or trade name or otherwise, except as expressly permitted hereunder."

(k) Section 12.4 line 4 of the Original Agreement is amended to read:

"Distributor shall mark each product and all advertising, promotional or other materials bearing any of the Marks with such notices as Affliction may require, including, but not limited to, notices that the Marks are trademarks of Affliction or Throwdown and are being used with permission of Affliction."

(l) Section 12.6 of the Original Agreement is amended by striking references to Xtreme on lines 3, 7 and 8.

(m) Section 12.7 of the Original Agreement is amended to read:

"Upon expiration or earlier termination of this Agreement, Distributor shall cease using the Marks in any manner, either similar or dissimilar to the use enumerated above, except to the extent permitted during any Disposal Period as further defined herein. Furthermore, Distributor's right under this Agreement relative to the Throwdown Trademark as subject and subordinate to Affliction's rights under Affliction's license agreement with Throwdown. Accordingly, should Affliction's rights relative to the Throwdown Trademark terminate or be suspended for any reason prior to the termination or expiration of this Agreement, Distributor's rights relative to the Throwdown hereunder shall cease simultaneously (subject to any disposal rights provided for herein) and the remainder of the terms and provisions of this Agreement shall otherwise continue in full force and effect including, but not limited to, Distributor's Minimum Purchase Requirements (and without any adjustments or reduction thereto) unless there are other grounds for termination or expiration hereunder. Notwithstanding the foregoing, so long as Distributor is not in default hereunder, it shall have the right to sell off any remaining Product within 90 days of the termination date, such sales to be made in accordance with and subject to, the terms of the Agreement."

(n) Section 13.1 of the Original Agreement is amended by striking references to Xtreme from line 4.

(o) Section 13.2 of the Original Agreement is amended by striking references to Xtreme and Ring from line 1.

(p) Section 13.3 of the Original Agreement is amended by striking references to Xtreme and Ring from lines 1 and 3.

(q) Section 14 of the Original Agreement is amended by striking references to Xtreme and Ring from lines 10, 12 and 14.

(r) Section 15.1 of the Original Agreement is amended by striking references to Xtreme and Ring from lines 4, 7, 9, 10, 11, 12, 13, 14 and 15.

(s) Section 15.2 of the Original Agreement is amended by striking references to Xtreme and Ring from line 3.

(t) Section 15.3 of the Original Agreement is amended by striking references to Xtreme and Ring from lines 3 and 4.

(u)  Section 15.4 of the Original Agreement is amended by striking references to Ring on line 1.

(v)  Section 16 of the Original Agreement is amended by striking references to Xtreme and Ring from lines 4, 6, 10, 13 and 16.

(w)  Section 18 of the Original Agreement is amended by striking references to Xtreme and Ring on line 1.

(x)  Section 20 of the Original Agreement is amended by striking references to Xtreme and Ring on lines 1 and 7.

(y)  Section 21 of the Original Agreement is amended by striking references to Xtreme and Ring on line 18.

(z)  Section 24 of the Original Agreement is amended by striking references to Xtreme and Ring on lines 2, 3, 9, 13, 14, 15 and 17.

(aa)  Section 29.1 of the Original Agreement is amended by striking references to Xtreme and Ring on line 17.

(bb)  Section 29.6(a) of the Original Agreement is amended by striking references to Xtreme and Ring on lines 3 and 12.

(cc)  Section 29.6(b) of the Original Agreement is amended by striking references to Xtreme and Ring on lines 2 and 6.

(dd)  Section 29.6(c) of the Original Agreement is amended by striking references to Xtreme and Ring on lines 5, 10, 11 and 13.

(ee)  Section 29.6(d) of the Original Agreement is amended by striking references to Xtreme and Ring on lines 2, 7 and 8.

(ff)  Schedule 3.1 of the Original Agreement is amended to reduce the Initial Term Minimum Purchase Requirements as follows:

Initial Term

- For year 1 (9/1/09-12/31/2010) to $2,500,000
- For year 2 (2011) to $3,000,000
- For year 3 (2012) to $3,500,000

First Renewal Term MNPR remains the same.

The Minimum Purchasing Requirement is based on orders placed by Multiprint and will include orders which Affliction or its licensees subsequently cancel, short ship or reduce.

(gg) Exhibit A of the Original Agreement is amended to exclude Archaic, The Ring and Xtreme Couture and amended to add Throwdown to the list of Trademarks.

2. **Representations.** The undersigned have full authority to execute this Amendment.

3. **Counterparts; Facsimile Signatures.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one document. Facsimile transmissions of the signatures of the parties to this Agreement may be relied upon, and shall have the same legal and binding effect as the originals of such signatures.

The parties have executed this Amendment to the Original Agreement on the dates written below.

AFFLICTION HOLDINGS, LLC

By: _____
NAME: ~~Courtney Dubar~~ MIKE EGECK
TITLE: ~~CEO~~ PRESIDENT

MULTIPRINT TEX MANUFACTURING LTD.

By: _____
NAME: Dan C. Elituv
TITLE: CEO